**DONALD A. GREEN, ESQ., (SBN 225171)**
**DOAN LAW FIRM, LLP**
**2850 PIO PICO DRIVE, SUITE D**
**CARLSBAD, CA 92008**
**PHONE (760) 450-3333**
**FAX (760) 720-6082**

Attorneys for Plaintiff, MARK BROWNELL

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARK BROWNELL,<br><br>Plaintiff,<br>vs.<br><br>SAN DIEGO GAS & ELECTRIC COMPANY, SEMPRA ENERGY,<br><br>Defendants. | CASE NO. 08 CV 53 DMS (BLM)<br><br>**PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR ORDER GRANTING LEAVE TO AMEND COMPLAINT**<br><br>Date: September 26, 2008<br>Time: 1:30 p.m.<br>Judge: Hon. Dana M. Sabraw<br>Dept: 10<br><br>Filed: January 9, 2008<br>Trial Date: June 22, 2009 |

Plaintiff MARK BROWNELL hereby submits his reply to defendants' opposition to his motion requesting leave to amend the complaint. This reply is based on Plaintiff's motion for leave to amend, Defendant's opposition, these herein points and authorities, the attached Declarations of Mark Brownell, Michael Willoughby, Donald A. Green, and all documents on file regarding this matter with this herein-named Court.

**I.**

**BACKGROUND**

Plaintiff, Mark Brownell, was employed by San Diego Gas & Electric Co. in August 1997 as a mechanic in the Gas Operations Department. It is undisputed that he Plaintiff was sent a notice of termination on July 24, 2004 (*See Decl. of James Boland, attached to Def. Opposition*, ¶8).

Plaintiff's Union Representative, Jerry Fecher, disputed the calculation of Plaintiff's long-term disability benefits and other deductions by letter on June 30, 2004 (*See Decl. of James Boland, attached to Def. Opposition*, ¶9). On October 4, 2004, Mr. Fecher appealed sent a letter of appeal to the Sempra Energy Benefits Committee. They received that letter that same day. (*See Decl. of Larry Stein, attached to Def. Opposition*, ¶2). That appeal was apparently denied on December 7, 2004. (*See Decl. of Larry Stein, attached to Def. Opposition*, ¶3).

The disputes were raised again in more detail in a letter from Mr. Brownell's counsel to defendants on June 1, 2005 (*See Decl. of Larry Stein, attached to Def. Opposition*, ¶4). After Defendants responded on July 21, 2005 that Mr. Brownell was not entitled to any further benefits, Plaintiff's counsel requested on September 29, 2005 that Defendants provide a copy of the requirements for Plaintiff to exhaust his administrative remedies. (*See Decl. of Larry Stein, attached to Def. Opposition*, ¶6). Instead of providing the administrative procedures, however, or even stating that Mr. Brownell had exhausted all of his administrative remedies, Larry Stein simply wrote on October 3, 2005, "That is the final step in the claims procedure as to those issues." (*See Decl. of Larry Stein, attached to Def. Opposition*, ¶7; *Exh. N attached thereto*).

Plaintiff filed this complaint on January 9, 2008. (*Decl. of Donald A. Green*, ¶ 8). Defendants never filed a demurrer to the original complaint but instead filed an answer on March 11, 2008 followed by a *Motion for Summary Judgment* on August 18, 2008. On August 22, 2008, just four days after Defendants filed their motion, Plaintiff filed his *Motion for Leave to Amend the Complaint* to clarify the claims in the complaint for violations of both ERISA § 502 (29 USC § 1132), ERISA § 510 (29 USC 1140) and for breach of fiduciary duties. (*Decl. of Donald A. Green*, ¶ 20). On September 12, 2008, Defendants filed their opposition to Plaintiff's motion. This reply is in response thereto.

## II.

## LEGAL ARGUMENT

A motion for leave to amend is appropriate prior to trial under Federal Rule of Civil Procedure 15(a)(2). That section states in relevant part:

"... a party may amend its pleading only with the opposing party's written consent or the court's leave. ***The court should freely give leave when justice so requires.***" (*emphasis added*)

Federal policy strongly favors determination of cases on their merits. Therefore, the role of pleadings is limited, and leave to amend the pleadings is freely given unless the opposing party makes a showing of undue prejudice, or bad faith or dilatory motive on the part of the moving party. *Forman v. Davis* (1962) 371 U.S. 178, 182, 83 S.Ct 227, 230. It has been further held that the circumstances under which Rule 15(a) "permit denial of leave to amend are limited." *Ynclan v. Department of Air Force* (5th Cir. 1991) 943 F.2d 1388, 1391. The policy favoring leave to amend is "a necessary companion to notice pleading and discovery." *Lone Stars Ladies Investment Club v. Schlotzsky's Inc.* (5th Cir. 2001) 238 F.3d 363, 367. "This policy [to allow amendment] is to be applied with 'extreme liberality'." *Eminence Capital, LLC v. Aspeon, Inc.* (9th Cir. 2003) 316 F.3d 1048, 1051.

In the present case, the scheduling order was signed May 7, 2008, with a deadline set by the court of June 9, 2008 to amend the pleadings. In *Coleman v. Quaker Oats Co.* (9th Cir. 2000) 232 F.3d 1271, 1294, the court held that an amendment, because it requires a modification of the scheduling order, requires leave of court and a showing of "good cause."

**A. <u>PLAINTIFF SATISFIES THE REQUIREMENTS OF FRCP 16(b) AND FRCP 15(a)</u>**

"Once the district court has filed a pretrial scheduling order pursuant to Rule 16 which establishes a timetable for amending pleadings, a motion seeking to amend pleadings is governed first by Rule 16(b), and only secondarily by Rule 15(a)." *Butler v. Southwest Airlines, Inc.* 2006 U.S.Dist. LEXIS 67397. Accordingly, the Court will first evaluate Plaintiff's motion under Rule 16 and then, if necessary, under Rule 15(a).

The case of *Butler v. Southwest Airlines, Inc.* (2006) 2006 U.S. Dist. LEXIS 67397 is on point. In *Butler*, Plaintiff sought to amend his complaint, alleging that he was injured in a Southwest Airline flight landing. A Rule 16 hearing was held on December 12, 2005. No one appeared at the hearing, after which time the court set a March 17, 2006 deadline to amend the Complaint. It wasn't until June 26, 2006 when the Plaintiff filed a motion for leave to amend to "more fully set forth all of

the damages ..." The Court analyzed the requirements under Rule 16(b) and well as Rule 15(a), and the interplay between the Rules, and held that Plaintiff would be permitted to amend the complaint[1].

In the instant action, there is no prejudice, Plaintiff immediately filed a Motion for Leave to Amend as soon as Defendant's theories of the case were revealed, and Plaintiff has not acted in bad faith.

**1. <u>PLAINTIFF CAN ESTABISH 'GOOD CAUSE' UNDER FRCP 16(B)</u>**

Fed. R. Civ. P. 16 provides, in pertinent part:

> "(b) [The district court] shall, after receiving the report from the parties under Rule 26(f) or after consulting with the attorneys for the parties and any unrepresented parties by a scheduling conference, telephone, mail, or other suitable means, enter a scheduling order that limits the time ... (1) to join other parties and to amend pleadings ...A schedule shall not be modified except upon a showing of good cause and by leave of the district judge[.]"

"Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.* (9th Cir. 1992) 975 F.2d 604, 609. Generally, to meet its burden under Rule 16's "good cause" standard, the movant may be required to show[2]:

- That Plaintiff was diligent in assisting the Court in creating a workable Rule 16 order;
- That Plaintiff's noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding Plaintiff's diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference; and
- That Plaintiff was diligent in seeking amendment of the Rule 16 order, once it became apparent that Plaintiff could not comply with the order.

The Ninth Circuit has also recognized that, "[t]he district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" *Johnson*, 975 F.2d at 609.

Applying the factors as articulated in the aforementioned authority, Plaintiff can make a showing of good cause. First, Plaintiff made a good faith attempt to assist the Court with creating the workable Rule 16 order. Defendant was unable to appear at the ENE on April 11, 2008 due to a scheduling conflict Plaintiff's counsel was then unable to appear at the case management conference

[1] The court stated: "First, there has not been undue delay. As previously noted, only seven weeks passed between the appearance of Plaintiff's counsel and the Motion to Amend the Complaint. Second, there is no evidence of bad faith on the part of Plaintiff. Third, Defendant has not shown that it would be unfairly prejudiced." *Butler* at 10.

[2] (*Jackson v. Laureate, Inc.* (E.D. Cal. 1999) 186 F.R.D. 605, 608):

that was set on May 8, 2008 because of a trial conflict. The court set the scheduling of dates, including an amendment of the pleadings by June 9, 2008. These dates appeared satisfactory to the parties and Plaintiff was prepared to comply given the state of the pleadings and discovery at the time of the order. (*Decl. of Donald A. Green,* ¶ 12-13).

Defendant never demurred to Plaintiff's complaint, despite their belief that the complaint was deficient. Instead, Defendant waited until August 18, 2008 to file a *Motion for Summary Judgment*. Plaintiff has always made clear that his allegations were for interference with benefits under both ERISA § 502 and § 510. Plaintiff has never amended the complaint before. Indeed, the various communications exchanged between the parties refer to Plaintiff's ongoing long term disability and medical benefits to which he is entitled under his plan, and, specifically, the *Summary Plan Description*, regardless of his employment status. More recently, initial disclosures from Defendants have provided further supporting evidence that Plaintiff's LTD benefits were unrelated to his termination, were miscalculated by SDGE, were not paid to Plaintiff as contracted, and that plan personnel were unsure of leave of absence and termination dates and in fact manufactured documents to support their calculations. (*Declaration of Donald A. Green,* ¶ *15-17*)

Finally, Defendants have not and will not suffer any prejudice from Plaintiff's amendment. Discovery is still in the early stages. No depositions have taken place, Plaintiff's initial disclosures were just served May 7, 2008, and supplemental disclosures served July 7, 2008. Plaintiff's experts were only designated September 2, 2008 pursuant to stipulation of the parties, and Plaintiff has granted Defendant an extension to October 2, 2008 to designate their experts. Trial is not scheduled to commence until June 22, 2009. (*Decl. of Donald A. Green,* ¶ 19). Moreover, Plaintiff filed an immediate motion for leave to amend on August 22, 2008, just four (4) days following the filing of defendant's *Motion for Summary Judgment*. The purpose of the motion was to clarify the allegations made by Plaintiff by specifically adding a timely claim for ERISA 502 violations and for breach of fiduciary duty, which were not fully evidence until Defendant's disclosures. (*Decl. of Donald A. Green,* ¶ 20).

While defendants argue that these claims were known to Plaintiff well before the filing of the complaint or the motion for leave to amend, Plaintiff's theories of liability were also well known to

defendant. In addition, it has been nearly an impossible feat to determine what has transpired from the transactional history of Plaintiff's benefits because SDGE kept altering the terms of his benefits and much of the interaction occurring at the Plan level wasn't revealed to Plaintiff until defendant's disclosures. First Defendants terminated Plaintiff. Then they denied him medical benefits while continuing to pay long term disability. (*Decl. of Mark Brownell*, ¶ 3). Then on August 24, 2006, he received a letter from SDGE / Sempra stating that they had made an overpayment of his LTD and required him to reimburse them $25,239.16 (*Decl. of Mark Brownell,* ¶ *10; Exh.* J). Plaintiff was not receiving any LTD for nearly two years. Then suddenly, on August 26, 2008, just four days after Plaintiff filed his *Motion for Leave to Amend*, Plaintiff received notice that his LTD benefits had been reinstated, effective August 23, 2008. (*Decl. of Mark Brownell,* ¶ *11*). Plaintiff's expert has determined that the amount of the overpayment was incorrect and in fact Mr. Brownell overpaid SDGE for their mistake in the amount of $1,637.80. (*Declaration of Michael Gene Willoughby*).

The documents provided by Defendants further underscore that even defendants themselves did not understand the plan benefits. For example, numerous documents show that SDGE was backdating documents to show dates for leave of absence as either 12/4/03 or 6/10/03, depending on who was making the inquiry (*Decl. of Donald A. Green,* ¶ *16; Exhs. F-G*) . This is new information that has been revealed to Plaintiff through the recent course of discovery in the last couple of months and emphasizes the difficulty in understanding the transactional history of Mr. Brownell's benefits. It has become evidently more clear over this time that, and especially with the recent developments of August 26, 2008, that Mr. Brownell was and is entitled to LTD despite hi employment status.

**2. <u>PLAINTIFF'S MOTION SHOULD BE GRANTED UNDER FRCP 15(A)</u>**

If good cause is shown, the second point of inquiry is pursuant to FRCP Rule 15(a). Rule 15(a) declares that leave to amend "shall be freely given when justice so requires.' " This mandate is to be heeded." *Foman v. Davis* (1962) 371 U.S. 178, 182. "In exercising its discretion with regard to the amendment of pleadings 'a court must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits rather than on the pleadings or technicalities.' . . . . Thus, 'Rule 15's policy of favoring amendments to pleadings should be applied with extreme liberality.'" *Eldridge v. Block* (9th Cir. 1987) 832 F.2d 1132, 1135. "Generally, this determination should be performed with

all inferences in favor of granting the motion." *Griggs v. Pace Am. Group, Inc.* (9th Cir. 1999) 170 F.3d 877, 880 (citing DCD *Programs, Ltd. v. Leighton* (9th Cir. 1987), 833 F.2d 183, 186.

Plaintiff has not previously filed a motion for leave to amend, discovery is in the early stages, it has only been two months since the expiration of the Court's June 9, 2008 order deadline for amendments to the complaint, and defendant's will not be prejudiced by any amendment.

**B. <u>PLAINTIFF'S CLAIMS ARE NOT TIME BARRED</u>**

It is undisputed that Plaintiff was terminated from his employment on July 24, 2004. (*Decl. of James Boland, attached to Def. Opposition*, ¶8). It is undisputed that this case was filed on January 9, 2008, less than four years following Plaintiff's termination. It is also undisputed that Jerry Fecher, Plaintiff's union representative, sent a letter appealing the denial of Plaintiff's benefits to the Sempra Energy Benefits Committee on October 4, 2004 and that appeal was denied on December 7, 2004. (*See Decl. of Larry Stein, attached to Def. Opposition*, ¶3).

ERISA does not contain a statute of limitations for benefits under an ERISA plan. *Flanagan v. Inland Empire Electric Workers Pension Plan* (9th Cir. 1993) 3 F.3d 1246, 1252. The court, therefore, has to look at the most analogous state statute of limitations. "California's statute of limitations for suits on written contracts, *California Code of Civil Procedure* section 337, provides the applicable statute of limitations for an ERISA cause of action based on a claim for benefits under a written contractual policy in California." *Wetzel v. Lou Ehlers Cadillac Group Long Term Disability Insurance Program* (9th Cir. 2000) 222 F.3d 643, 2000 U.S. App. LEXIS 17973. *California Code of Civil Procedure* section 337 provides, in relevant part, that "an action upon any contract, obligation, or liability founded upon an instrument in writing" must be commenced within four years. Therefore, the applicable statute of limitation for Plaintiff's ERISA § 502 action is four years, or December 7, 2008. To the extent that Defendants may claim that the statute began to run earlier than December 7, 2008, it is well-settled that Plaintiff's claims would have been tolled while he was exhausting his administrative remedies. *See, e.g. Rodriguez v. Southern California District Council of Laborers Local 783* (1984) 160 Cal.App.3d 956, 207 Cal.Rptr. 75; *United Steelworkers of America v. Enterprise Wheel & Car Corp.* (1960) 363 U.S. 564.

Rule 15(c)(1) also provides for relation back under the present circumstances. That section affords relation back where the law that provides the statute of limitations allows relation back and where "(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading …" In the present case, all claims asserted by Plaintiff arise out of the same conduct, transaction, or occurrence in that they all stem from denial of his benefits under the SDGE benefits plan.

Plaintiff's ERISA 502 claims are not barred by the statute of limitations, and, alternatively, were either tolled by Plaintiff's attempts to exhaust his administrative remedies or because they relate back to the original complaint.

## C. PLAINTIFF'S CLAIMS ARE NOT AN IMPERMISSIBLE ATTEMPT TO AVOID SUMMARY JUDGMENT, BUT SUPPORTED BY A SUBSTANTIAL SHOWING TO SUPPORT THE AMENDMENTS

Plaintiff is not trying to circumvent Defendant's *Motion for Summary Judgment* with this motion for leave to amend (*Decl of Donald A. Green, ¶ 21*). The claims that Plaintiff has asserted for violations of ERISA section 502 are made within the applicable statute of limitations. Defendants have cited *M/V American Queen v. San Diego Marine Constr. Corp.* (9th Cir. 1983) 708 F.2d 1483, 1492, as standing for the proposition that because a plaintiff "may be maneuvering desperately to stave off the immediate dismissal of the case," "district judges are not content with an allegation sufficient in law; they want to see some evidence to back it up." *(Opposition*, ¶ 12:1-5). The evidence Defendants seek can be found in Defendant's own opposition as well as additional evidence submitted with this reply to Defendants' opposition.

Defendants have submitted numerous declarations in support of their opposition to Plaintiff's *Motion for Leave to Amend*. Among those documents are the Amended Agreement Between San Diego Gas & Electric Company and Local Union 465[3].

Defendants rely on this clause as conclusive evidence that Plaintiff is not entitled to medical benefits. They fail to include, however, the *Summary Plan Description*. Sempra Energy, according

[3] That Agreement states "… If the employee is unable to return to work at the end of the leave, or if at any time during the leave it becomes conclusive that the employee will be unable to return to work, the employee will be terminated." (*Exh. B to Declaration of James Boland attached to Defendant's Opposition*)

to their December 7, 2005 letter, was relied upon in determining Mr. Brownell's entitlement to benefits. (*Decl. of Mark Brownell; Exh. B (Bates 00003*)[4]: That *Summary Plan Description* provides:

- "If you become disabled while employed, your medical and dental and disability overage will continue throughout your period of disability and deductions will continue to be taken from your paycheck." (*Decl. of Mark Brownell, Exh. D [Life Events], p. 28 (Bates 00037); Exh. E [Medical], p. 45 (Bates 000107)*).

- "If you become totally disabled before age 65 and while covered, you may apply for a waiver of premium under the plan if your disability is expected to last for at least nine months. If your waiver is approved, your premium for Employee Life Insurance will be waived for so long as you are disabled ..." (*Decl. of Mark Brownell, Exh. F [Life and AD&D], p. 8 (Bates 000126)*);

- "If you are unable to work due to a disability and you are receiving Current and/or Extended Sick Leave, your AD&D Insurance coverage will continue and the cost will continue to be deducted from your paycheck ..." (*Decl. of Mark Brownell, Exh. F [Life and AD&D], p. 19 (Bates 000137)*);

- Disability Payments end at "age 65 or for 42 months, if greater." (*Decl. of Mark Brownell, Exh. G [Disability], p. 14 (Bates 000161)*).

- Plaintiff's Health care coverage, Life Insurance, AD&D Insurance, and Cash Balance Plan "will continue while you are receiving LTD benefits." (*Decl. of Mark Brownell, Exh. G [Disability], p. 22 (Bates 000169)*).

Plaintiff began receiving long term disability after his short-term disability ended. The total amount of long term disability was estimated at $1,302.60. (*Decl. of Mark Brownell, ¶ 9; Exh. A (Bates 000002)*). He began receiving disability and was approved for the premium waiver for life insurance. (*Decl. of Mark Brownell, Exh. L, (Bates 000212-000213*). Then on August 24, 2006, he received a letter from SDGE / Sempra stating that they had made an overpayment of his LTD and required him to reimburse them $25,239.16 (*Decl. of Mark Brownell, ¶ 10; Exh.* J (Bates 000209-000210)).

Plaintiff has been denied full entitlement to benefits under his Plan. Michael Willoughby, an economist expert retained by Plaintiff, has provided an independent analysis of the "quantifiable" present value of the reasonably likely loss off benefits less offsets suffered by Mark S. Brownell as a result of the Company's faulty processing of his entitlements and has determined that the present

[4] That letter states: "The Company further relied on portions of the respective *Summary Plan Description* including the Medical Plan/Summary Description which provides that coverage ceases upon termination of employment."

value of said losses amounts to $377,513. (*Declaration of Michael Gene Willoughby,* ¶ *2*). A true and correct copy of Mr. Willoughby's report is attached to the *Declaration of Michael Willoughby* submitted and filed concurrently with this reply.

Plaintiff has made a substantial showing that he has valid and timely claims for relief under ERISA section 502 (29 USC § 1132) and for breach of fiduciary duties.

## D. PLAINTIFF'S PROPOSED NEW CLAIMS ARE NOT FUTILE

Finally, Defendants claim in their opposition that Plaintiff's claims for breach of ERISA disability benefit plan and breach of fiduciary duty are fatally flawed because Plaintiff has not sued "the Plan", but SDGE and Sempra Energy. Interestingly, Defendants do not assert that they are not the plan, nor does any of the evidence presented deny that they are the plan or identify the name of the alleged correct Plan entity. On the contrary, the *Summary Plan Description*, attached to the *Declaration of Mark Brownell* as *Exhibits D* through *I*, identifies the Plan as that of San Diego Gas & Electric, a party to this lawsuit. All further correspondence, attached to the *Declaration of Mark Brownell* as *Exhibits A, B, J and K,* is from either SDGE or Sempra Energy, or both. Defendant's July 21, 2005 letter to Plaintiff's counsel states "This outlines the position of the Plan fiduciary" referring to the December 7, 2004 letter from Sempra Energy. (*Declaration of Donald A. Green,* ¶ *4*).

Defendants have never heretofore identified any other party or entity responsible for the plan, and their assertions that they are not the Plan are unsupported and uncorroborated by any admissible evidence. As far as Plaintiff and this Court are aware, defendants are the Plan and are correctly sued in this matter. Plaintiff's claims are therefore not futile or flawed.

For the aforementioned reasons, Plaintiff's motion for leave to amend must be granted.

Dated: SEPTEMBER 15, 2008 DOAN LAW FIRM LLP

By: /S/ DONALD A. GREEN
DONALD A. GREEN
Attorney for Plaintiffs, MARK BROWNELL